No. 09-1335

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

---

### SUHAIL NAZIM ABDULLAH AL SHIMARI, et al.
**Plaintiffs-Appellees**

v.

### CACI INTERNATIONAL, INC. and CACI PREMIER TECHNOLOGY, INC.

**Defendants-Appellants**

---

On Appeal from the United States District Court for the Eastern District of
Virginia, Alexandria Division

Case No. 08-cv-827 (Hon. Gerald Bruce Lee)

---

## PETITION FOR REHEARING AND REHEARING EN BANC

---

Susan L. Burke
BURKE PLLC
1000 Potomac Street, NW
Suite 150
Washington, D.C. 20007
(202) 232-5504

Katherine Gallagher
CENTER FOR
CONSTITUTIONAL
RIGHTS
666 Broadway, 7th Floor
New York, NY 10012

Shereef Hadi Akeel
AKEEL & VALENTINE, P.C.
888 West Big Beaver Road
Troy, Michigan 48084-4736
(248) 269-9595

*Counsel for Appellees*

# TABLE OF CONTENTS

Table of Contents..................................................................................i

Table of Authorities..........................................................................ii

Preliminary Statement..................................................................... 1

Argument........................................................................................ 3

I.   The Panel Majority Ignores Controlling Supreme Court Preemption
Jurisprudence ............................................................................ 3

    A. There Is No Conflict Between Contractors' Tort Law and Federal Duties to
Prisoners.................................................................................. 3

    B. The Combatant Activities Exception Does Not Demonstrate That Congress
Intended To Immunize For Profit Contractors from Tort  Liability ........ 6

II.  The Panel Majority Disregards Controlling Supreme Court and Fourth Circuit
Precedents Holding That Civilian Courts Have Authority Over Violations of
the Laws of War....................................................................8

III.  The Panel Majority Improperly Substituted Its Policy Judgment for the Expert
and Considered Judgment of the U.S. Military................................. 12

Conclusion.................................................................................... 15

# TABLE OF AUTHORITIES

Cases

*Abdullah v. American Airlines, Inc.*, 181 F.3d 363 (3rd Cir. 1999) ................ 8

*Al Marri v. Pucciarelli*, 534 F.3d 213 (4th Cir. 2008) ...........................2, 11

*Al-Quraishi v. Nakhla*, 728 F. Supp. 2d 702 (D. Md. 2010) ........................ 11

*Boumediene v. Bush,* 553 U.S. 723 (2008) .......................................2, 3, 11

*Boyle v. United Technologies Corp.*, 487 U.S. 500 (1988) ....................1, 3, 4

*Cipollone v. Liggett Group, Inc.*, 505 U.S. 504 (1992) ............................. 8

*Coleman v. Tennessee*, 97 U.S. 509 (1878) ............................................. 10

*Correctional Svcs. Corp. v. Malesko,* 534 U.S. 61 (2001) ...........................4

*Dennis v. Sparks*, 449 U.S. 24 (1980) ...…………………………………...6

*Dorse v. Eagle-Picher Industries, Inc.*, 898 F.2d 1487 (11th Cir. 1990)........... 4

*Hamdan v. Rumsfeld,* 548 U.S. 557 (2006) ......................................2, 11

*Hamdi v. Rumsfeld,* 542 U.S. 507 (2004) ..........................................2, 11

*Hines v. Davidowitz,* 312 U.S. 52 (1941) ............................................. 8

*Ibrahim v. Titan Corp.*, 391 F.Supp.2d 10 (D.D.C. 2005) ...........................6

*Katrina Canal Breaches Litig. Steering Comm. v. Wash. Group Int'l, Inc.*, 620 F.3d 455 (5th Cir. 2010) ...................................................................4

*Kennedy v. Sanford*, 166 F.2d 568 (5th Cir. 1948) ...................................10

*Little v. Barreme*, 6 U.S. (2 Cranch) 170 (1804) ...................................2, 10

*McMahon v. Presidential Airways*, 502 F.3d 1331 (11th Cir. 2007) ................ 14

*Medtronic, Inc. v. Lohr*, 518 U.S. 496 (1996) .......................................8

*Miree v. DeKalb County*, 433 U.S. 25 (1977) ........................................5

*Mitchell v. Harmony,* 54 U.S. (12 How.) 115 (1851) …………………………2, 10

*The Paquete Habana,* 175 U.S. 677 (1900) …………………………………...2, 10

*Rasul v. Bush,* 542 U.S. 466 (2004) …………………………………….2, 11

*Saleh v. Titan Corp.*, 580 F.3d 1 (D.C. Cir. 2009) …………………………*passim*

*Saleh v. Titan Corp.*, 436 F.Supp.2d 55 (D.D.C. 2006) …………………… 6

*Scott v. Greenville County,* 716 F.2d 1409 (4th Cir. 1983) ……………….. 6

*Silkwood v. Kerr-McGee,* 464 U.S. 238 (1984)…………………………… 8

*United States v. Graner*, 69 M.J. 104 (C.A.A.F. 2010)…………………… 6

*United States v. Harman*, 68 M.J. 325 (C.A.A.F. 2010) …………………..…. 6

*United States v. Olson*, 126 S.Ct. 510 (2005) …………………………….. 7

*United States v. Passaro*, 577 F.3d 207 (4th Cir. 2009) ……………………2, 12

*United States v. Smith*, 68 M.J. 316 (C.A.A.F. 2010) …………………….. 6

*Vance v. Rumsfeld*, __F.3d __, 2011 WL 3437511 (7th Cir. 2011)…………..9, 11

*Wyeth v. Levine*, 129 S.Ct. 1187 (2009) ……………………………………8

Statutes

10 U.S.C. §881……………………………………………………... 5

10 U.S.C. §892……………………………………………………... 5

10 U.S.C. §893……………………………………………………... 5

10 U.S.C. §928……………………………………………………... 5

18 U.S.C. §2430A………………………………………………… 9

18 U.S.C. §2441…………………………………………………… 9

18 U.S.C. §§3261-65............................................................9

28 U.S.C. §2671............................................................. 7

28 U.S.C. §2679(d)(1) .................................................... 7

28 U.S.C. §2680.............................................................. 3

<u>Other Authorities</u>

Brief of United States as *Amicus Curiae, Saleh v. Titan Corp.*, No. 9-1313 (U.S. May 2011) ......................................................... 13

73 Fed. Reg. 16,764, 16,767 (Mar. 31, 2008)........................................... 14

Geneva Convention Relative to the Protection of Civilian Persons in Time of War, Aug. 12, 1949, 6 U.S.T. 3516, 75 U.N.T.S. 287, Art. 3, 27, 31, 32, 37, 100, 147..........................................................4, 5

U.S. Army Field Manual 3-100.21................................................. 5, 13

U.S. Army Field Manual 34-52..........................................................5

U.S. Army Regulation 190-8, Enemy Prisoners of War, Retained Personnel, Civilian Internees and Other Detainees............................................. 5

Army Regulation 715-9, Contractors Accompanying the Force .................... 13

W. Winthrop, Military Law and Precedents 889 (rev.2d ed.1920)..............10, 11

# PRELIMINARY STATEMENT

In dismissing Iraqi civilians' claims against the contractors who tortured them at Abu Ghraib, the panel majority (Niemeyer, J. and Shedd, J.) committed two significant errors, each warranting en banc review. *See Al Shimari v. CACI Int'l, Inc.,* No. 09-1335 (4th Cir. Sept. 21, 2011)

First, the panel majority's opinion conflicts with the text of the Federal Tort Claims Act ("FTCA") and the limits the Supreme Court has imposed on preemption of state law, and gives contractors *de facto* immunity from suit. As elaborated upon in Judge King's lengthy and thoughtful dissent, the panel majority "affords *Boyle* [*v. United Technologies Corp.*, 487 U.S. 500, 504 (1988)] an excessively robust elasticity," *Al Shimari*, slip op. at 28, and wholly disregards the Supreme Court's admonitions on the need to apply a "limiting principle" to ensure that preemption in contractor cases was narrowly applied. *See id.* at 37. The panel majority ignored *Boyle*'s holding that there must be a conflict between federal policy and the operation of state law, and disregarded the "repeated declarations of our executives, echoed by Congress, expressly disavow[ing]" the "torture and abuse of detainees," which demonstrate the agreement – not conflict – between federal policy and tort liability for acts of torture. *Id.* at 30.

Second, the panel majority's attempt to eliminate judicial review of "conduct carried out during war, and the effects of that conduct," *Al Shimari*, slip op. at 12;

1

contradicts recent Supreme Court and Fourth Circuit decisions reviewing detention during wartime, *see United States v. Passaro*, 577 F.3d 207 (4th Cir. 2009); *Boumediene v. Bush,* 553 U.S. 723 (2008); *Hamdan v. Rumsfeld,* 548 U.S. 557 (2006); *Hamdi v. Rumsfeld,* 542 U.S. 507 (2004); *Rasul v. Bush,* 542 U.S. 466 (2004); *Al Marri v. Pucciarelli*, 534 F.3d 213 (4th Cir. 2008); and disregards centuries of precedent holding that the courts have the authority and obligation to adjudicate violations of the laws of war. *See, e.g., Little v. Barreme*, 6 U.S. (2 Cranch) 170 (1804); *Mitchell v. Harmony,* 54 U.S. (12 How.) 115 (1851); *The Paquete Habana*, 175 U.S. 677, 708 (1900). The panel majority also disregards the Executive Branch's and military's stated positions on contractors' potential liability and placement outside the chain of command. As Judge King noted, "[i]n obstinate opposition to the government's prescribed path, the panel majority would protect contractors from civil liability even when there is no indication that the government authorized the conduct underlying the asserted liability." *Al Shimari*, slip op. at 33-34.

The *Al Shimari* petitioners also expressly endorse and incorporate the arguments set forth by the petitioners seeking Rehearing En Banc in the related case of *Al-Quraishi v. L-3 Servs., Inc.*, No. 08-1696 (October 5, 2011), that this court lacked appellate jurisdiction over the district court's interlocutory order denying the defendants' motions to dismiss.

2

**ARGUMENT**

## I. THE PANEL MAJORITY IGNORES CONTROLLING SUPREME COURT PREEMPTION JURISPRUDENCE

By adopting the D.C. Circuit's novel ruling in *Saleh v. Titan Corp.*, 580 F.3d

1 (D.C. Cir. 2009), *cert. denied*, 131 S.Ct. 3055 (2011),[1] on the scope of

preemption under the combatant activities exception to the Federal Tort Claims

Act, the panel majority in this case departs from both the statutory text and *Boyle v.*

*United Technologies Corp.*, the Supreme Court precedent creating the government

contractor defense. As Judge King observed, "[t]he majority makes no attempt to

conceal the sweeping breadth of the preemption doctrine it adopts." *Al Shimari* slip

op. at 38.

### A. There Is No Conflict Between Contractors' Tort Law and Federal Duties to Prisoners

The panel majority opinion's endorsement of the *Saleh* Court's "battle-field

preemption" doctrine is inconsistent with the Supreme Court's decision in *Boyle*

*v.United Technologies Corp.*, 487 U.S. 500 (1988). In *Boyle*, the Court held that

the discretionary function exception to the FTCA, 28 U.S.C. §2680(a), preempted

state law tort suits against military contractors if and only if "a significant conflict

---

[1] "[D]enial of certiorari does not constitute an expression of any opinion on the merits." *Boumediene v. Bush,* 549 U.S. 1328, 1329 (2007) (Stevens and Kennedy, JJ, statement respecting denial of certiorari).

3

exists between an identifiable federal policy or interest and the [operation] of state law, or the application of state law would frustrate specific objectives of federal legislation." *Boyle,* 487 U.S. at 507 (internal citations and quotation marks omitted). The Court held that contractors may invoke the judicially-created defense *only* when "the state-imposed duty of care that is the asserted basis of the contractor's liability . . . is *precisely contrary* to the duty imposed by the Government contract . . . ." *Id.* (emphasis added). Until *Saleh* and the panel majority's decision, federal circuit courts have uniformly refused to apply the government contractor defense if a defendant failed to establish a *direct* conflict between its contractual duties and the duties imposed by state tort laws. *See Katrina Canal Breaches Litig. Steering Comm. v. Wash. Group Int'l, Inc.,* 620 F.3d 455, 465 (5th Cir. 2010) ("[t]he government contractor defense in *Boyle,* stripped to its essentials, is fundamentally a claim that the Government made me do it"); *Dorse v. Eagle-Picher Industries, Inc.,* 898 F.2d 1487 (11th Cir. 1990). The Supreme Court affirmed that the government contractor defense applied only "[w]here the government has directed a contractor to do the very thing that is the subject of the claim." *Correctional Svcs. Corp. v. Malesko,* 534 U.S. 61, 74 n. 6 (2001).

In Abu Ghraib and other military prisons, the United States forbade, rather than required, the torture of prisoners in Iraq. *See* Geneva Convention Relative to

the Protection of Civilian Persons in Time of War, Aug. 12, 1949, 6 U.S.T. 3516, 75 U.N.T.S. 287, Art. 3, 27, 31, 32, 37, 100, 147; 10 U.S.C. §§ 881, 892, 893, 928; U.S. Army Regulation 190-8, Enemy Prisoners of War, Retained Personnel, Civilian Internees and Other Detainees §1-5; U.S. Army Field Manual 34-52, §1-8; U.S. Army Field Manual 3-100.21, § 1-39. Requiring CACI to abide by tort law duties prohibiting the beating and sexual assault of defenseless civilian detainees would have promoted, not interfered with, legal and contractual compliance with federal interests. *See Miree v. DeKalb County*, 433 U.S. 25, 32 (1977) (lawsuit premised on defendants' breach of duties to the federal government "might be thought to advance federal aviation policy by inducing compliance with FAA safety provisions."); *see also Al Shimari* slip op. 30-31 (King, J., dissenting) ("it is quite plausible that the government would view private tort actions against the perpetrators of [torture] as *advancing* the federal interest in effective military activities") (emphasis in original).

Yet, even at the motion-to-dismiss stage, the panel majority looked beyond the complaint to find that the military actually authorized some of the Plaintiffs' treatment, and that "CACI employees were integrated into the military activities at Abu Ghraib prison in Baghdad, over which the military remained command authority," – all to ground a basis for immunity. *Al Shimari* slip op. at 9-10.

This fact-finding –improper at this stage of the proceedings –contradicts the record. The Amended Complaint alleged that two CACI interrogators, Daniel Johnson and Steve Stefanowicz, *directed* low-ranking military police soldiers to torture prisoners. Am. Complaint ¶¶ 1, 66-67. The soldiers involved were court-martialed, convicted, and imprisoned for their torture of prisoners, which was thus plainly unauthorized by the federal goverment. *Id*. ¶1; *see also, e.g., United States v. Graner*, 69 M.J. 104 (C.A.A.F. 2010); *United States v. Harman*, 68 M.J. 325 (C.A.A.F. 2010); *United States v. Smith,* 68 M.J. 316 (C.A.A.F. 2010) (upholding court martial convictions).[2] These allegations must be assumed true at the motion to dismiss stage, and conclusively demonstrate that the defendants were not acting consistent with – let alone pursuant to – federal policy interests.

## B. The Combatant Activities Exception Does Not Demonstrate That Congress Intended to Immunize For Profit Contractors from Tort Liability

The panel majority held that it need not find a conflict between a contractor's state and federal, because the combatant activities exception gives rise to field preemption: "*It is the imposition per se of the state or foreign tort law that conflicts with the FTCA's policy of eliminating tort concepts from the battlefield.*"

---

[2] In addition to these factual errors, the panel majority overlooks the case law holding that "participation in a conspiracy with government actors does not confer government immunities." *Saleh v. Titan Corp.*, 436 F.Supp.2d 55, 58 (D.D.C. 2006). *See also Dennis v. Sparks*, 449 U.S. 24, 29-30 (1980); *Scott v. Greenville County*, 716 F.2d 1409, 1422 (4th Cir. 1983).

*Al Shimari* slip op. at 11, quoting *Saleh*, 580 F.3d at 7 (emphasis in original). This

"reads into the Act something that is not there." *United States v. Olson*, 126 S.Ct.

510, 512 (2005). *See Saleh*, 580 F.3d at 26 (Garland, J., dissenting) ("it is not plain

that the FTCA's policy is to eliminate liability when the alleged tortfeasor is a

contractor rather than a soldier. That, after all, is *not* what the FTCA says.").

Indeed, Congress expressly *excluded* contractors from the FTCA. 28 U.S.C. §2671

("the term 'Federal agency' . . . does not include any contractor with the United

States.").

   The FTCA governs claims against the United States, and carves out certain

exceptions to the general waiver of sovereign immunity.  As Judge King correctly

observed, "it does not shield members of the armed services or other government

employees from tort suits," let alone private contractors. [3] *Al Shimari*, slip op. at

39.  In the dissent's words:

> the majority deems the plaintiffs' claims preempted in
> the absence of an Attorney General's certification that
> would have been essential were these defendants soldiers
> or sailors rather than contractors. The majority thereby
> grants the defendants unqualified protection that even our
> citizens in uniform do not enjoy.

*Id.*

---

[3] Government officials' immunity is governed by the Westfall Act, which permits
substitution of the United States as defendant only if, the Attorney General certifies
that the employees acted within the scope of his office or employment. 28 U.S.C.
§2679(d)(1). Given that the Defendants' military co-conspirators were prosecuted
for their actions, it is far from clear that the United States would have given such
certification.

The panel majority disregarded the Supreme Court's warning that "[i]mplied pre-emption doctrines that wander far from the statutory text are inconsistent with the Constitution." *Wyeth v. Levine*, 129 S.Ct. 1187, 1205-06 (2009) (Thomas, J., concurring in judgment). Courts may not infer that Congress has "occupied" a field (*i.e.*, government contractors' tort liability) that Congress expressly declined to enter. *Cf. Hines v. Davidowitz*, 312 U.S. 52, 55-57 (1941) (field preemption occurs "where the federal government, in the exercise of its superior authority in this field, has enacted a *complete scheme of regulation*") (emphasis added).[4]

## II. THE PANEL MAJORITY DISREGARDS CONTROLLING SUPREME COURT AND FOURTH CIRCUIT PRECEDENTS HOLDING THAT CIVILIAN COURTS HAVE AUTHORITY OVER VIOLATIONS OF THE LAWS OF WAR

The fundamental rationale for the panel majority's decision is not the text of the Federal Tort Claims Act or any other statute, but a policy decision that the torture of prisoners held by the military during wartime, even if unlawful and

---

[4] The panel majority's assertion that military policy may subjected to "the different tort laws of the 51 States,"*Al-Quraishi* slip op. at 9, does not justify this departure from precedent. The Supreme Court has repeatedly recognized that state tort remedies may be useful to further federal standards of care. *See Silkwood v. Kerr-McGee*, 464 U.S. 238, 253 (1984) ("[f]ederal preemption of the standards of care can coexist with state and territorial tort remedies"); *Medtronic, Inc. v. Lohr*, 518 U.S. 496 (1996) (statutory preemption clause did not deny states "the right to provide a traditional damages remedy for violations of common law duties when those duties parallel federal requirements"); *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 519 (1992); *Abdullah v. American Airlines, Inc.*, 181 F.3d 363, 375 (3rd Cir. 1999).

carried out by for-profit contractors, may not be subject to judicial scrutiny. *See, e.g., Al-Quraishi* slip op. at 9 ("the interest in battlefield preemption is the *complete eradication* of the 'imposition *per se*' of tort law, that is the complete removal of even the *possibility* of suit from the battlefield."); *Al Shimari* slip op. at 8 (civil liability "would undermine the flexibility requires in determining the methods for gathering intelligence"); *id.* at 12 ("conduct carried out during war and the effects of that conduct are, for the most part, not properly the subject of judicial evaluation").

This concern is overbroad, and inconsistent with Supreme Court's treatment of claims arising out of violations of the laws of war. As the Seventh Circuit recently observed in rejecting the former Secretary of Defense's argument for immunity for torture, "Our courts have a long history—more than 200 years—of providing damages remedies for those whose rights are violated by our government, including our military." *Vance v. Rumsfeld*, __ F.3d __, 2011 WL 3437511 *24 (7th Cir. 2011). If the Secretary of Defense is potentially liable, then surely so are private corporations that tortured prisoners contrary to military direction.

That the judiciary has a role in enforcing the criminal laws against violations of the laws of war is, of course, well-settled. *See, e.g.,* 18 U.S.C. § 2430A (Torture statute), 18 U.S.C. § 2441 (War Crimes Act); 18 U.S.C. § 3261-65 (Military

Extraterritorial Jurisdiction Act); *Coleman v. Tennessee*, 97 U.S. 509, 514-15 (1878) (jurisdiction of military tribunals over soldiers is not exclusive)*; Kennedy v. Sanford*, 166 F.2d 568 (5th Cir. 1948). But there is also ample precedent for civil liability for violations.

In *Little v. Barreme*, 6 U.S. (2 Cranch) 170 (1804), the Supreme Court held that a Captain in the U.S. Navy was liable for illegally seizing a ship during wartime, although the Captain had acted on orders from the President. The Court held that the President's orders authorizing seizure of the ship went beyond his statutory authority, and therefore did not immunize the captain from a lawsuit for civil damages. *Id.* at 179. The Court rejected the argument that the owner's claim should be resolved by "negotiation" with the government rather than a damages action. *Id.* In *Mitchell v. Harmony,* 54 U.S. (12 How.) 115 (1851), the Court permitted a soldier to be sued for trespass for wrongfully seizing a citizen's goods while in Mexico during the Mexican War. In *The Paquete Habana*, 175 U.S. 677, 708 (1900), the Court awarded damages for the seizure of enemy nationals' fishing boats, because it found that "an established rule of international law" exempted unarmed, civilian fishing vessels from capture as prizes of war.[5] The majority failed to address these precedents.

---

[5] Colonel William Winthrop, whom the Supreme Court has called "the Blackstone of military law." *Hamdan v. Rumsfeld*, 548 U.S. 557, 597 (2006), confirms this in his authoritative treatise, stating that "[f]or an act done *jure belli*, or for the

Thus, the district court was correct to hold in *Al-Quraishi* that "A defendant can only claim immunity under the laws of war if its actions comport with the laws of war." *Al Quraishi*, 728 F. Supp. 2d at 722. Since 2001, the Supreme Court and this Circuit have repeatedly affirmed that the laws do not go silent, and the courts do not lose their authority, when a war begins. *See Boumediene v. Bush,* 553 U.S. 723 (2008); *Hamdan v. Rumsfeld,* 548 U.S. 557 (2006); *Hamdi v. Rumsfeld,* 542 U.S. 507 (2004); *Rasul v. Bush,* 542 U.S. 466 (2004); *Al Marri v. Pucciarelli*, 534 F.3d 213 (4th Cir. 2008). Eliminating judicial oversight over for-profit contractors in Iraq and Afghanistan, and relying on corporations to police their employees' treatment of civilians "would amount to an extraordinary abdication." *Vance*, 2011 WL 3437511 at *76.

Moreover, the very premise of the majority's concern about judicial interference with military prerogative is deeply flawed. The panel majority repeatedly refers to interrogations of unarmed prisoners at Abu Ghraib as occurring on "the battlefield," such that a suit by prisoners tortured by defendants would

---

exercise of a belligerent right, an officer or soldier cannot be called to account in a civil proceeding....The existence, however, of war will not....justify wanton trespasses upon the persons or property of civilians, or other injuries not sanctioned by the laws or usages of war, nor will it justify wrongs done by irresponsible unauthorized parties. For such acts the offending officer or soldier may be made liable in damages." W. Winthrop, Military Law and Precedents 889 (rev.2d ed.1920).

threaten "the flexibility that military necessity requires in determining the methods for gathering intelligence." *Al Shimari* slip op. at 8. In doing so, it disregards the record and this Court's opinion in *United States v. Passaro*, which decisively rejected a CIA contractor's characterization of his fatal assault on a prisoner as a "battlefield interrogation" justified by the exigencies of war:

> No true "battlefield interrogation" took place here; rather, Passaro administered a beating in a detention cell. Nor was this brutal assault "conducted by the CIA"—rather, Passaro was a civilian contractor with instructions to interrogate, not to beat…. To accept this argument would equate a violent and unauthorized "interrogation" of a bound and guarded man with permissible battlefield conduct. To do so would ignore the high standards to which this country holds its military personnel.

577 F. 3d 207, 218 (4th Cir. 2009).

## III.   The Panel Majority Improperly Substituted Its Policy Judgment for The Expert and Considered Judgment of the U.S. Military

The panel majority portrayed its attempt to remove "even the *possibility* of suit from the battlefield," *Al-Quraishi*, slip op. at 9, in a manner it incorrectly believed would promote military prerogatives:

> The Commander in Chief and the military under him have adopted policies, regulations, and manuals and have issued orders and directives for military conduct, and they have established facilities and procedures for addressing violations and disobedience. On this structural ground alone…we are requiring that the claims of these four Iraqi detainees alleging abuse in a military prison in Iraq be dismissed by the district court.

*Al Shimari*, slip op. at 12. But this disregards the actual content of those military regulations, manuals, and orders, which make clear that contractors are *not* in the military chain of command or subject to military discipline for violations, and cannot engage in combatant activities. As the Solicitor General stated in *Saleh*:

> Under domestic and international law, civilian contractors engaged in authorized activity are not "combatants"; they are "civilians accompanying the force" and, as such, cannot lawfully engage in "combat functions" or "combat operations."

Brief of United States as *Amicus Curiae* at 15, *Saleh v. Titan Corp.*, No. 9-1313 (U.S. May 2011) (citations omitted).

Army regulations and field manuals make it equally clear that contractors, not the military, are responsible for supervising and disciplining their own employees. *See* U.S. Army Regulation 715-9, Contractors Accompanying the Force §3-2(f) (military contractors must "perform the necessary supervisory and management functions of their employees," because "[c]ontractor employees are not under the direct supervision of military personnel in the chain of command."); *id.* §3-3(b); U.S. Army Field Manual 3-100.21 §4-45 ("Maintaining discipline of contractor employees is the responsibility of the contractor's management structure, not the military chain of command. The contractor, through company policies, has the most immediate influence in dealing with infractions involving its employees. It is the contractor who must take direct responsibility and action for

13

his employee's conduct."); *id.* §1-22, §4-2. *See also McMahon v. Presidential Airways*, 502 F.3d 1331, 1348 (11th Cir. 2007) (a private contractor is not in the chain of command.").

Defense regulations explicitly invoke tort liability, warning that "[i]nappropriate use of force could subject a contractor or its subcontractors or employees to prosecution or *civil liability* under the laws of the United States and the host nation." Contractor Personnel Authorized to Accompany U.S. Armed Forces, 73 Fed. Reg. 16,764, 16,767 (Mar. 31, 2008). The defense contracting industry has tried to persuade the military to adopt the panel majority's view that their operations should receive the type of immunity granted by the panel majority – for any actions taken in support of U.S. military operations. But in 2008, the military expressly rejected that proposition, and instead reaffirmed the proper role tort liability, stating: "The clause *retains the current rule of law, holding contractors accountable for the negligent or willful actions of their employees, officers, and subcontractors....*" *Id.* (emphasis added). The military continued:

> [T]o the extent that contractors are currently seeking to avoid accountability to third parties for their own actions by raising defenses based on the sovereignty of the United States, this rule should *not* send a signal that would invite courts to shift the risk of loss to innocent third parties.

*Id.*

In concluding that private contractors should be categorically free from any

tort liability, the panel majority appeals inappropriately substituted its own opinion

regarding the roles and responsibilities of persons in a theater of war for the expert

judgment of the United States military in concluding to the contrary.

## CONCLUSION

For the foregoing reasons, the Court should vacate the panel decision, rehear

the appeal, and remand to the district court for discovery.

Respectfully submitted,

/s/ Susan L. Burke
Susan L. Burke
BURKE PLLC
1000 Potomac Street, NW
Suite 150
Washington, D.C. 20007
(202) 232-5504

Katherine Gallagher
CENTER FOR CONSTITUTIONAL
RIGHTS
666 Broadway, 7th Floor
New York, NY 10012

Shereef Hadi Akeel
AKEEL & VALENTINE, P.C.
888 West Big Beaver Road
Troy, Michigan 48084-4736

*Counsel for Plaintiffs-Appellees*

## CERTIFICATE OF SERVICE

I hereby certify that on October 5, 2011, I electronically filed the foregoing

with the Clerk of Court using the CM/ECF System, which will send notice of such

filing to the following registered users:

J. William Koegel, Jr.
John F. O'Connor
Steptoe & Johnson LLP
1330 Connecticut Ave., NW
Washington, DC 20036

Raymond B. Biagini
Robert A. Matthews
Bikran Bandy
Shannon G. Konn
McKenna Long & Aldridge, LLP
1900 K. St., NW
Washington, DC 20006

/s/ Susan L. Burke
Susan L. Burke
BURKE PLLC
1000 Potomac Street, NW
Suite 150
Washington, D.C. 20007
(202) 232-5504